# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **A.A.,** *on her own behalf and on behalf of her minor child*, **A.H.,** | } } } |
| Plaintiffs, | } } } Case No.: 2:19-cv-00726-MHH |
| v. | } } |
| **TRACY EUBANKS, et al.,** | } } |
| Defendants. | |

## MEMORANDUM OPINION

This action concerns events that took place in 2017 when A.A.'s daughter, A.H., was taken into custody by the Alabama Department of Human Resources. A.A. has sued seventeen named defendants in their individual capacities. Two of the named defendants are employees of the Midfield Police Department. The balance of the named defendants are employees of "the Jefferson County Alabama Department of Human Resources." (Doc. 8, pp. 2–5). A.A. has named one fictitious defendant. (Doc. 8, p. 3). The defendants have asked the Court to dismiss the claims against them. (Doc. 9).

On a motion to dismiss, a district court must view the factual allegations in a complaint in the light most favorable to the plaintiff. *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). When, as in

this case, the facts alleged in the complaint relate to state court proceedings, a federal district court may take judicial notice of the state court proceedings. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (citations omitted) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

In her amended complaint, A.A. alleges that on August 23, 2017, she contacted the Midfield Police Department to report that A.H. was missing. (Doc. 8, p. 6, ¶ 25). Later that evening, Midfield police officers notified A.A. that they had found A.H. (Doc. 8, p. 7, ¶ 29). When Midfield Officers Culpepper and Eubanks, defendants in this case, interviewed A.H., she reported that "she had been sexually abused by an older brother when the family had lived in Illinois." (Doc. 8, p. 7, ¶ 31). A.A. "explained to investigators that A.H. had reported the same alleged incidents in the state of Illinois and [] the allegations had been investigated by both police and [Illinois DHR] and found to be false." (Doc. 8, p. 7, ¶ 32). A.A. also explained to the police officers that A.H. "had a history of making false allegations of a sexual nature to avoid parental discipline." (Doc. 8, p. 8, ¶ 32). A.A. alleges that "A.H. never made any allegations of abuse occurring in Alabama." (Doc. 8, p. 8, ¶ 35). A.A. gave Officers Culpepper and Eubanks the "names and numbers of the Illinois juvenile detectives that had found A.H. sexual abuse allegations untrue." (Doc. 8, p. 8, ¶ 36).

In response, defendants Culpepper and Eubanks told A.A. that she needed to remove A.H.'s brother, A.A.'s "special needs, school aged, son," from the home that A.A., A.H., and A.H.'s brother shared, or "A.H. would be placed in protective custody." (Doc. 8, p. 9, ¶ 38). When A.A. responded that she could not immediately comply because it was late and she had no relatives in Alabama, Officers Culpepper and Eubanks, acting without a warrant or court order, "immediately placed A.H. in protective custody" with DHR. (Doc. 8, p. 9, ¶¶ 40–41). A.H. remained in DHR custody until early February of 2018. (Doc. 8, p. 9, ¶ 43).

On August 25, 2017, two days after Officers Culpepper and Eubanks placed A.H. in DHR protective custody, the Juvenile Court of Jefferson County, Bessemer Division, held a shelter care hearing concerning A.H. (Sealed Doc. 18, p. 4). A.A. attended the hearing. (Sealed Doc. 18, p. 4). The Juvenile Court judge appointed a guardian *ad litem* to represent A.A.'s interests. The GAL attended the hearing. (Sealed Doc. 18, p. 4). So did defendant Sanders. (Sealed Doc. 18, p. 4). The Juvenile Court vested custody of A.H. in DHR and ordered that the child be interviewed. (Sealed Doc. 18, p. 6). The interview was scheduled for August 30, 2017. (Sealed Doc. 18, p. 6). The Juvenile Court indicated that A.H. was placed in protective custody to investigate allegations. (Sealed Doc. 18, p. 7). The Juvenile Court ordered that there be no contact between D.H. (A.H.'s brother) and A.H. and directed DHR to provide medical treatment to A.H. and "supervise the Parties'

compliance" with the court's order. (Sealed Doc. 18, pp. 8–9). The Juvenile Court set a preliminary permanency hearing on November 1, 2017. (Sealed Doc. 18, p. 10).

A.A. appeared at the November 1, 2017 hearing with her attorney. (Sealed Doc. 18, p. 13). The GAL attended the hearing, as did defendant Miller. (Sealed Doc. 18, p. 13). At the hearing, DHR moved to amend the dependent petition, and the Juvenile Court granted the motion. (Sealed Doc. 18, p. 13). The Juvenile Court ordered a psychological evaluation of A.A. and directed A.A. to complete a parenting skills program. (Sealed Doc. 18, p. 15). The Juvenile Court found that placement of A.H. with A.A. would be contrary to A.H.'s welfare and interests. (Sealed Doc. 18, p. 16). The Juvenile Court ordered that A.A. and D.H. were restrained from having contact with A.H. (Sealed Doc. 18, p. 17). The Juvenile Court directed DHR to supervise the parties' compliance with its order and directed that DHR should not allow A.A. to interfere in A.H.'s medical treatment. (Sealed Doc. 18, p. 18). The Juvenile Court set the matter for a permanency hearing on February 1, 2018. (Sealed Doc. 18, p. 19).

Counsel for A.A. filed a motion to dismiss the Juvenile Court matter and a motion to amend the November 1, 2017 Juvenile Court order. With respect to the motion to dismiss, counsel for A.A. argued that the allegations of sexual abuse that gave rise to A.H.'s protective custody had been resolved in Illinois. (Sealed Doc.

4

18, p. 25). In response, the GAL stated that A.A. "had a 20-year history with the equivalent of 'DHR' in Illinois" and that a 2015 police report indicated that A.H. was cutting herself. (Sealed Doc. 18, p. 26). Despite evidence of self-harm and suicidal ideations, A.A. had not "sought out any mental health doctors to treat her child." (Sealed Doc. 18, p. 25). On November 21, 2017, the Juvenile Court denied the motion to dismiss but amended the November 1, 2017 order to eliminate the requirement of a mental health evaluation for A.A. and to restore A.A.'s visitation privileges with A.H. (Sealed Doc. 18, pp. 25–26). The Juvenile Court set the A.H. matter for trial. (Sealed Doc. 18, p. 26).

During the February 12, 2018 hearing in the A.H. Juvenile Court matter, A.A. acknowledged that A.H. was dependent because A.H. needed services. The Juvenile Court ordered A.A. to "complete in-home services" and directed DHR to supervise the parties' compliance with the order. The Juvenile Court placed A.H. in the custody of A.A. (Sealed Doc. 18, pp. 39–40, 43).

A.A. alleges that while A.H. was in DHR custody, A.H. "was subjected to living in unstable living environments, subjected to neglect, abuse, failure of adult supervision, failure of medical care, and failure of mental health case." (Doc. 8, p. 9, ¶ 43). A.A. contends that she "specifically informed" defendants Reliford, Eubanks, Culpepper, and McClintock about A.H.'s suicidal tendencies. (Doc. 8, p. 10, ¶ 44). A.A. asserts that while A.H. was in DHR custody, A.H. "was admitted to

Children's Hospital after taking 28 birth control pills" that another child in a group home gave A.H., (Doc. 8, p. 10, ¶ 46); "received chemical burns to her hair, scalp and neck" when a "staff person [] attempted to perm A.H.'s hair without A.A.'s permission," (Doc. 8, p. 10, ¶ 48); and cut herself while sitting "in a tub of water fully clothed," (Doc. 8, p. 11, ¶ 49). A.A. complains that "A.H. was prescribed medication for depression against A.A.'s consent." (Doc. 8, p. 11, ¶ 52).

A.A. alleges that nearly four months before DHR returned A.H. to her custody, she (A.A.) received a letter from DHR that stated: "We did not find sufficient evidence to support that you caused sexual abuse: sexual molestation to said child. Our agency did not find sufficient evidence to prove that sexual abuse occurred." (Doc. 8, p. 12, ¶ 56). According to A.A., "[d]espite the fact that no abuse occurred and no basis existed to support a claim of dependency, A.H. remained in protective custody illegally detained by the Defendant's [sic] until 2/2/2018." (Doc. 8, p. 12, ¶ 57). A.A. asserts that "[a]s a result of the conduct of Defendants," she and A.H. "have been caused to suffer physical and emotional injuries and damages, including embarrassment and humiliation, and has been caused to incur medical and legal bills and other expenses." (Doc. 8, p. 16, ¶ 75).

A.A. asserts claims against the defendants under 42 U.S.C. § 1983 for illegal protective custody, unlawful seizure, and malicious prosecution under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

(Doc. 8, pp. 17–20). A.A. also asserts state law claims for negligence, wantonness, malice, and deliberate indifference. (Doc. 8, pp. 20–21).

In their motion to dismiss, the defendants rely on, among other things, the affirmative defense of qualified immunity. The availability of this affirmative defense is a "question of law" for the court to determine. *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008). Qualified immunity protects public employees "from suit in their individual capacities for discretionary actions performed in the course of their duties." *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1318 (11th Cir. 2016). "'Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)) (internal quotation marks omitted).

Qualified immunity allows government officials, including police officers, "'to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Brown*, 608 F.3d at 733 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Qualified immunity 'does not offer protection if an official knew or reasonably should have known that the action

he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Carter*, 821 F.3d at 1319 (quoting *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003), in turn quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)) (alteration in *Holmes*).

To establish the defense, a defendant must demonstrate that she "was acting within the scope of [her] discretionary authority." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). Once that showing is made, "[t]he burden then shifts to the plaintiff to overcome the defense of qualified immunity." *Case*, 555 F.3d at 1325; *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) ("[T]he burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity") (emphasis in original). To carry this burden, the plaintiff must demonstrate that the defendant "'violated clearly established law based upon objective standards.'" *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998) (quoting *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)).

A.A. argues that the defendants "are not eligible for qualified immunity" because they acted "beyond the scope of their authority." (Doc. 12, p. 2). Still, A.A. acknowledges that under Alabama law:

> A child may be removed by a law enforcement officer from the custody of a parent . . . if there are reasonable grounds to believe . . . [t]he child . . . is in imminent danger from the surroundings of the child and that the removal of the child is necessary for the protection of the health and safety of the child.

8

(Doc. 12, p. 3) (quoting Ala. Code § 12-15-306(a)(1)). Section 12-15-306 states that a when a law enforcement officer removes a child from a parent's custody, the officer "shall immediately deliver the child to the Department of Human Resources." (Doc. 12, p. 3) (quoting Ala. Code § 12-15-306(b)). It is undisputed that Midfield Police Officers Culpepper and Eubanks placed A.H. in protective custody with DHR because A.H. reported that her brother had sexually abused her. The officers acted within their statutory authority in doing so because the officers had "reasonable grounds to believe" that A.H. was in "imminent danger" from her surroundings in her home and that her removal was necessary for her safety.

As discussed at the hearing in this matter, as part of its investigation of A.H.'s sexual abuse allegation per Alabama Code § 26-14-7, DHR could not accept at face value A.A.'s assertion that A.H. had made the same allegation years before in Illinois and that the allegation had proven baseless. Within three days of the date on which DHR received A.H. in custody, the Juvenile Court of Jefferson County, Bessemer Division held a 72-hour shelter hearing. From that point forward, the DHR defendants acted pursuant to orders from the Juvenile Court. The Juvenile Court ordered that DHR maintain custody of A.H., even after DHR's investigation allegedly established that there was not "sufficient evidence to prove that sexual abuse occurred." (Doc. 8, p. 12, ¶ 56). The Juvenile Court found as grounds for A.H.'s continued protective custody that A.H. required mental health treatment, and

9

that A.A. had refused to provide treatment.[1]  The GAL believed that DHR protective custody was in A.H.'s best interest.  Thus, the DHR defendants did not exceed their authority in maintaining custody of A.H. after DHR concluded that there was not sufficient evidence of sexual abuse.

The defendants have established that they acted within their discretionary duties, and A.A. has not demonstrated that the defendants "'violated clearly established law based upon objective standards.'"  *Gonzalez*, 161 F.3d at 1295 (quoting *Evans*, 117 F.3d at 1320).  Therefore, the Court will dismiss the federal claims against the defendants based on the affirmative defense of qualified immunity.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over A.A.'s state law claims.  The Court will dismiss those claims without prejudice.[2]  The Court will enter a separate order closing this case.

**DONE** and **ORDERED** this January 23, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[1] A.A. alleges a variety of purported deficiencies in the Juvenile Court proceedings.  (Doc. 8, pp. 13–15, ¶¶ 64–69).  None of the defendants named in the complaint in this matter is an appropriate defendant with respect to a due process claim concerning the state court proceedings.

[2] The Court has not disregarded A.A.'s allegations concerning A.H.'s alleged suicide attempts while she was in DHR custody.  Those allegations are extremely serious, but A.A. has not tied those factual allegations to her federal constitutional claims.  Those allegations relate to A.A.'s state law claims.  If she wishes, A.A. may pursue those claims in state court.  28 U.S.C. § 1367(d).